NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0306n.06

Case No. 25-1620

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 15, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| JASON RINCONES, | ) | |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; McKEAGUE and BUSH, Circuit Judges.

SUTTON, Chief Judge. Between 2001 and 2007, the State of Michigan convicted Jason Rincones of several felonies, including armed robbery and distribution of narcotics. In 2024, when his former girlfriend told him to leave her house, he aimed his pistol's laser sight at her. Rincones pleaded guilty to unlawfully possessing a firearm as a felon. At sentencing, the district court enhanced his sentence based on the fact that Rincones pointed his pistol, not just the laser, at his victim. We affirm.

I.

On March 2, 2024, Jason Rincones arrived uninvited at the home of his former girlfriend. When she asked him to leave, he crouched in the bushes outside her residence and aimed the red laser sight from his pistol at her body. Afraid what he might do next, she called the police. Officers arrived at the scene, arrested Rincones, and asked him if he had a gun. He denied having a gun.

It took little time, however, for the officers to find his gun in the bushes beside the house with the laser sight still attached. That presented a problem for Rincones, whose eight prior felony convictions barred him from possessing a firearm. Rincones called his former girlfriend from jail to apologize. When she told him that he had pointed a gun at her as if to try to kill her, he replied "I can't understand why I did what I did, man. I didn't think." R.54 at 6.

A federal grand jury indicted Rincones on one count of possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). He pleaded guilty, and the district court accepted his plea. During the plea proceedings, Rincones admitted that he possessed the gun but denied that he pointed it at anyone.

The Probation Office prepared a presentence report. Observing that Rincones's conduct separately amounted to felony assault with a dangerous weapon under Michigan law, the report recommended that the district court apply a sentencing enhancement for the use of a gun "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (2024 Guidelines). Rincones initially objected, arguing that he had pointed only the laser, not the gun, at his former girlfriend. But when the Probation Office circulated an updated presentence report containing the same recommendation, and when the district court asked whether he had any objections to his sentence, he told the court that he had no remaining objections. The court applied the enhancement.

After reviewing Rincones's long criminal history and the dangerousness of his offense, the district court decided that his sentence should run consecutively to any sentence imposed by the State of Michigan for Rincones's parole violations. The court imposed a within-Guidelines sentence of 126 months.

II.

*Enhancement for using a firearm.* Rincones claims that the district court improperly applied a four-level enhancement for "us[ing] or possess[ing] any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Because Rincones forfeited this argument by failing to raise it before the district court, he must satisfy the stringent requirements of plain-error review. That is to say, he must show (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quotation omitted).

The § 2K2.1(b)(6)(B) enhancement applies to defendants who use or possess a firearm or ammunition "in connection with another felony offense." Michigan-law assault with a dangerous weapon, the separate felony at issue, requires: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Nix*, 836 N.W.2d 224, 230 (Mich. Ct. App. 2013) (quoting *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999)). Rincones disputes the second prong, arguing that he pointed only a laser, not a gun, at his victim. The evidence at sentencing, however, amply supports the district court's contrary finding.

Rincones all but admitted what he now disputes. When he called his former girlfriend from jail to apologize, she told him that he had aimed a gun at her: "you pointed it at me; from afar, you were going to do it." R.54 at 6. Rincones did not deny doing so. "I can't understand," he replied, "why I did what I did." R.54 at 6. "I didn't think," he then lamented. R.54 at 6. On top of that, the firearm recovered at the scene "was equipped with a laser attachment" when officers found it. R.54 at 5. "The deferential clear-error standard requires us to defer to the district court's

3

finding about what transpired" if we find it "plausible on the record as a whole." *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022). That Rincones pointed the whole pistol, and not just the laser, at his former girlfriend is surely plausible, indeed exceedingly likely, on this record. It follows that Rincones cannot show that the district court committed a plain error or indeed any error in applying this enhancement. *See United States v. Lester*, 98 F.4th 768, 777 (6th Cir. 2024).

Rincones tries to counter this conclusion by pointing out that the district court, in applying the enhancement, failed to mention the incriminating phone call with his former girlfriend and the police report. But one reason that the district court did not go into detail about this supporting evidence is that, by that time in the proceeding, Rincones no longer challenged the enhancement. Having failed to challenge the enhancement and having failed to identify this issue when the court asked the *Bostic* question, Rincones is in no position to criticize the court for not saying more about the many factual bases for this enhancement. Nothing in sentencing law, at any rate, requires district courts to reason in the way of a mathematical proof, naming each fact and subsidiary finding that supports an ultimate conclusion. *United States v. Alexander*, 59 F.3d 36, 39 (6th Cir. 1995). If the district court makes the factual basis for the enhancement clear, the failure to discuss more particularized findings by itself does not establish error, much less plain error. *See United States v. Clay*, 162 F.4th 757, 779 (6th Cir. 2025).

*Consecutive sentence.* Rincones separately argues that the district court failed to adequately explain its decision to make his sentence consecutive to any potential state sentence for his parole violation. Here, too, Rincones failed to object to the adequacy of the district court's reasoning when asked at the end of the sentencing hearing, and we accordingly review the objection for plain error. *See United States v. Harmon*, 607 F.3d 233, 237 (6th Cir. 2010).

4

District courts have considerable discretion in deciding whether to impose a consecutive sentence. *Setser v. United States*, 566 U.S. 231, 236–38 (2012). "[I]n determining whether the terms imposed are to be ordered to run concurrently or consecutively," 18 U.S.C. § 3584(b) requires district courts to consider "the factors set forth in [18 U.S.C. §] 3553(a)." Section 3553(a), in turn, instructs district courts to consider a range of factors, including "any pertinent policy statement" issued by the United States Sentencing Commission. 18 U.S.C. § 3553(a)(5). The most relevant policy statement says that district courts should structure sentences to achieve "reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). The application notes advise courts to consider the § 3553(a) federal sentencing factors. *Id*. n.4(A). They additionally recommend that, when the offense separately represents a parole violation, the sentence should run consecutively to the sentence imposed for the violation. *Id*. n.4(C).

As for process, a district court "must do two things" in explaining why it imposed a consecutive sentence. *United States v. Gomez*, 129 F.4th 954, 964 (6th Cir. 2025). First, it should "turn[] its attention to" the relevant policy statement and commentary. *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) (quotation omitted). A district court satisfies this obligation "by reviewing and adopting a presentence report" that cites the relevant policy statement. *Gomez*, 129 F.4th at 964; *United States v. Hartman*, 426 F. App'x 395, 399–400 (6th Cir. 2011). Second, it should make its reasoning "generally clear." *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009) (quotation omitted).

The district court readily satisfied these requirements. It explained that it reviewed the presentence report, which referred to § 5G1.3(d) and which recommended a consecutive sentence. And it made its reasoning "generally clear." *Id*. (quotation omitted). The court began with a lengthy discussion of the § 3553(a) factors, emphasizing the seriousness of Rincones's crime and

the armed robberies in his three-decade criminal history. It then responded to Rincones's request that his sentence run concurrently. "Quite frankly," the court said, "I don't know that that's appropriate given everything that we've talked about." R.82 at 27. When the court engages "in a lengthy discussion of the sentencing factors in explaining the sentence itself, it is generally clear that the decision to impose a consecutive sentence is based on the same factors." *United States v. Murphy*, 591 F. App'x 377, 386 (6th Cir. 2014) (quotation omitted); *see Berry*, 565 F.3d at 343; *United States v. Briggs*, 543 F. App'x 583, 584 (6th Cir. 2013). The district court did not err, let alone plainly.

We affirm.